The next case is number 09-5044, Gaylord v. United States. Mr. Fletcher, when you're ready. Good morning, Your Honor. May it please the Court. The principal and, I think, only significant error of the Court below is its ruling that the U.S. Postal Service stamp represents a fair use of Mr. Gaylord's copyrighted sculptural work. There's no dispute that the column is a sculptural work, sculptured by Mr. Gaylord. Nineteen seven and a half foot high soldiers in a column. There is no dispute that it is covered by a number of copyrights. A very good picture of the copyrighted property can be found at page 15 of Appellant's brief, also appendix 1592. That's the picture that appears on the government's stamp. They didn't copy the statues, they copied a picture of the statues. What is the, is there a distinction that you believe should be erased? No, I don't think that's a distinction at all, Your Honor, because the copyrighted work is the statute, the infringement is the picture as it appears on the postage stamp. The post, there was an interim picture taken, originally at least as a gift for the photographer's father, which would plainly be a fair use under the non-commercial exception and nobody would have, there was no problem with that. The fact that the picture was the source of the image used by the Postal Service, I think is, I suppose, relevant but not material is the technical legal phrase here. Just so I understand, is it because the photograph may be a derivative work to which the taker is entitled to copyright protection, but that does not in any way prevent the original creator of the column from his entitlement to copyright protection over his creation? So that if the government wants to take this picture and make it into a stamp, they've got to pay two pipers, right? They've got to pay the guy who took the picture and they've got to pay the guy who created the statute because both hold independent property rights. That would be my argument. Frankly, I'm not terribly concerned about the picture taker because I represent the person whose right was infringed by the government. But yes, that is right. And the government recognized that in respect to the person who took the picture. And the person who took the picture told them that they needed to get permission from the holder of the underlying right and the government plainly recognizes that it has to get permission to use copyrighted works, but they just ignored him. And the result was a pretty significant loss of income. And could I get you to focus on the fair use factor, factor number one, the purpose and character of the use. And in particular, whether or not the photograph, well, whether or not the stamp was transformative such that this would tend more towards a fair use or that that factor would tend more towards fair use. I believe if you compare the original statue and the stamp, which unquestionably is a derivative work, no matter how it was derived, because that is a very nice picture of the sculptural work. Transformative is a difficult concept to deal with here because it's both a dictionary word and it is sometimes used as a word of art for fair use. And the Supreme Court in Campbell against Acuff-Rose tends to use it in both respects when it talks about a degree of transformativeness or how transformative is the document. Now, your question, Your Honor, I think was where does it tend on the scale of transformative? The answer would be very much against fair use. If you want to see what is transformative for purposes of fair use, I can give you a couple of examples, perhaps, Oh Pretty Woman from the Acuff-Rose case. The original, I guess I'll go on home, it's late, there'll be tomorrow night, but wait. And again, here we're talking only about the lyrics, not the melody. I guess I'll go on home, there'll be tomorrow night, but wait. What do I see? Is she walking back to me? Yeah, she's walking back to me, oh pretty woman. Because, two time and woman girl, you know you ain't right. Two time and woman. I want to interrupt your argument because you're talking about copying of that which was copyrighted. What I'm trying to understand is the difference between copying a the copyrighted work, which is a work of art, a work of sculpture, and actually copying the sculpture itself. Where does the statute allow that distinction? The copying of the sculpture, Your Honor, is a derivative work. They didn't copy the sculpture. I'm sorry, the copying of the sculpture by photography. There'd be no problem if they had just copied the sculpture and were selling the sculpture or models of the sculpture. That's not the issue. That's clearly infringement. Yes. The photographing of the sculpture is a derivative work under section 101, the definition section under 101, a work based on one or more pre-existing works, which, and I'm not quoting exactly now here, in some form recasts, transforms, or adapts the original. The copyright owner has the exclusive right to make a derivative work, which in this case the stamp plainly is, with and of course here's the rub that gets us into courthouse right today, unless the copy is a fair use under section 107. We see these uncertainties in the evolution of the statute was resolved in connection with works of architecture. So these are the principles that you think need to be applied here? I beg your pardon, Your Honor. This is not a work of architecture. This is a work of sculpture. Precisely. That's why I was wondering about the applicability of the principles where the blueprints would have been covered. Here we have a photograph of an original work of art, setting aside the ownership of that work of art as opposed to the ownership of the copyright to the work of art, which I think is a question that may need to be confronted along the way. There's no question that Mr. Gaylord does not own the statues. Is that right? He only owns the copyright. Mr. Gaylord only owns the copyright, but that nevertheless as a matter of prima facie right under the copyright statute gives him and him alone the right to prevent infringements of it. Because of the absence of work for hire? Is that the reason? No, it's not. It's got nothing to do with work for hire. Whether this is a work for hire or not is not an issue in this case. If he worked for hire, he wouldn't be able to control the copyright, would he? No, he wouldn't. But this is not an argument that the government has made. It's not an argument that anybody else has made and nobody made any effort to stop. But there's no question as to who owns the statue, is that right? The statues themselves? As between the United States government, the United States Army, there are a number of people in there. There's no question that ownership of the physical statutes no longer resides in Mr. Gaylord. Your point would be that's not relevant to the copyright infringement. He owns the copyright. That is correct. So ownership of the statutes has no bearing on this case, correct? That's my position, yes. As far as I know, it's the government's position also, unless they come up with a new argument this morning. So is it true that the lower court never looked at the commercial use of the stamps in connection with factor number one for the fair use analysis? Well, commercial use bears on the fair use analysis. It's one of four factors. Well, it's articulated in number one, and I thought I understood one of your arguments to be that the lower court didn't properly consider or take into account the fact that the government was selling stamps for a profit, this was a commercial use, when it analyzed factor number one. Am I misunderstanding one of your arguments? I think it's factor number four, but other than that, you're not misunderstanding anything. Factor number one under the statute says the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit education purposes. Number four, which used to be the primary one, is the one that is more... That's the market potential. Yeah, commerciality is a part of commerciality. And I didn't see anything in the lower court's opinion that took into account commercial nature of the use with regard to its analysis under factor number one. Is that correct? Am I wrong about that? I don't recall anything. I believe you're correct, yes. So to pursue your comment on commerciality, is this the distinction you're drawing? You're not saying that a visitor to this site can't take a photograph? Of course not. Right, of course not. As a matter of fact, yesterday afternoon, there were dozens of them when we were there, and neither of us tried to stop it, Your Honor. Now, where is the distinction between copyright violation and this threshold display of a national monument? The distinction between the copyright infringement and the taking of a photograph is that while the photograph is always a derivative work, it plainly falls... The photographs we were seeing taken, at least, could be expected to fall within the fair use exception because there was no... There's no apparent commercial intention, whatever. Most of them were of family members or friends or whatever. Or standing in front of the statue or kneeling down or something like that and posing before it. And these things are going to be taken, maybe half a dozen prints made and sent to family friends, but that's it. But not sold, which is a critical distinction I imagine you would draw. If I set up, took my camera out there, took a photograph and proceeded to sell 10,000 copies of it on the internet in the form of posters or any other display, you would consider that to be a copyright infringement. You would hear from... You. Probably Ms. Harvey, but you'd hear from one of us if we found out about it. Before you run out of time, would you touch on the joint authorship matter? Why aren't some of the people who were recommending the changes that he agreed to join authors? The main answer to that, Your Honor, is that this is not a work of joint authorship because the government... Well, in the first place, there's no evidence that any other person contributed any of the copyrightable subject matter here. Second, the court found that Mr. Leckie's testimony as to getting in there and tinkering with the ponchos and the way they looked on the statues was simply apparently a flaw or a fault of his memory or something because the invoices pretty clearly showed that what he said he thought he had done was impossible. The statues were elsewhere at the time he supposedly worked on them. The government says that the wearing of the capes, the expressions on the faces, the... They said they... ...and so on, that there was significant contribution. You say none of that contributed to the copyrightable nature, but... I would say it was direction which almost anybody who accepts a commission for a work will take. He certainly talked with them, but he himself did all or he and the people he employed did all of the physical work. You say accepts a commission, but the issue doesn't arise if it's treated as a work made for a commission. Do you have reason to parse the relevant information? I believe, Your Honor, that under the standards of the case, the name of which escapes my memory at the moment, this was clearly not a work for hire. These people were not paying him a salary, they weren't furnishing him his workspace, they weren't paying his medical benefits or social security. Was he paid for the sculpture? Sure, but that's not the measure of... Since the Supreme Court dealt with the subject... Sometime when I was with my prior law firm, which was more than a dozen years ago, in the landmark case on what is a work made for hire, it's determined by agency principles, basically. And if I heard the name of it, that's not the test. Whether you get paid for your work and whether it's a work made for hire are fairly far different on the spectrum. Let's hear from the other side and we'll save you rebuttal time. Oh, excuse me. May I make one more point in answering the question? Mr. Leckie, on behalf of the government, acknowledged, and this is on paragraph one of joint appendix 1171, that Gaylord is the sole author of the column, the sculpture. Okay, thank you. Mr. Bowden? May it please the court. The Fair Use Doctrine recognizes... Would it be convenient if I had to start backwards? Because we're all kind of right now fresh on the authorship issue. Would it be okay if you started there? Sure. Okay. So the government has a cross appeal on the lower court's determination of whether or not Mr. Gaylord is entitled to sole ownership or sole copyright ownership. Is that right? Your Honor, I wouldn't characterize it as a cross appeal, but yes, we are challenging that a joint owner... You're correct. It's a firm on an alternative basis. Exactly. Exactly. We are arguing that a joint owner of both the column and the memorial as a rights in both of those works. The CFC found that Mr. Gaylord created the composition of the column and not just the individual soldiers. So the CFC made that fact finding. That's something we review for clear error, correct? That's right. That's right. And so the government's argument is the CFC clearly erred by concluding that the No, that's not correct, Your Honor. Oh, I'm sorry. Then tell me how they clearly erred. Okay. Your Honor, it's not even an issue of clear error. We accept the facts that were found by the trial court. What we're arguing is that the trial court actually made three legal errors that are reviewed de novo in this particular case. And in fact, if you look on appendix page A8, there's a whole list of facts that the court found that do support that institutions other than Mr. Gaylord contributed copyrightable content. That include the ponchos, that includes the wind that was reduced from the ponchos, that includes even the age of the soldiers and the creases in the face. For example, the Veterans Advisory Board at some point instructed Mr. Gaylord to change  Right. But those are, I guess to me that all sounds like facts. So where are those three legal errors that you're referring to? Your Honor, the three legal errors are, first of all, the court used the wrong standard to assess the intent of the parties. Second of all, the second legal error is that the court considered only sculptural contributions to be the sole means of contributing copyrightable content. And third, the court presumed Mr. Gaylord to be the culprit. And so turning to the first legal error, the issue of intent, that's governed directly by the statute in Title 17, which says that the proper legal standard is the intent of more than one owner to combine their contributions into a unified work. That's it. So when the court sits there and it cites the dispute over the legal ownership of the intent of the parties to create one work together. But it's hard to reconcile that with the actual disclaimer of this same issue, that this was a work made for hire. It's true that the statutory provisions weren't complied with in the beginning. But as you trace the evolution of the copyright through first the contractor and then the sculptor where the contractor did not pursue, I'll call the sculptor a subcontractor, although we understand that this is an artistic relationship. It's very hard to find intent in what looks more like oversight than intent. I think to find the intent in this particular case, Your Honor, one need look no further than the application brochure that was given to Mr. Gaylord and Mr. Gaylord's response to the selection committee. The application brochure, this is back in 1990 before he even began working on the project, said that this is a project that will be made in the collaborative environment. It's a project that will be incorporated into a larger memorial where there'll be other artistic works. In response to that, this is on appendix page A1023 through 26. This is the brochure. In response to that, Mr. Gaylord forwarded both a resume and an application statement saying, I welcome the collaborative process. I've worked with committees before. I understand that and I'm happy to do so. I think from the very beginning up through certainly 1990 through 1992, the parties worked together in a very collaborative environment. Does the government provide copyrightable content? By the government, I include Cooper Locke, any of the agents of the government who have now signed over to the government. Did they provide independently copyrightable work to the memorial? Yes, Your Honor, they did. If you look at the Seventh Circuit case of Guymon versus McFarland. Judge Postman is the only one that has ever said this in that Seventh Circuit case. Every other Judge Postman in the case that you're referring to only allowed for the possibility given that it could result that nobody could have a copyright in it, which clearly is not the case here. You want to take a chance? You want to respond to that? I guess the point that I'm trying to make, Your Honor, isn't so much the issue of whether the contributions are independently copyrightable or not. I know there's a split between the circuits and my argument here is that the contributions were independently copyrightable. For example, the Veterans Advisory Board provided the story, the background, the history, the ethnicity, the equipment. None of that's present in the stamp. None of that is part of what Mr. Gaylord sought a copyright on. The only copyright that we're determining the ownership of right now are the 19 soldiers known as the column. He did not seek to copyright the back story for the soldiers. The government's contributions in that regard are irrelevant to whether or not the government should be entitled to ownership of the column as a copyright. No, I disagree, Your Honor. I think all that back story went into the creation of the column. Do you disagree with the specific premise that his copyright does not include the back story for the soldiers? His copyright does not include the back story for the soldiers. Does his copyright include the rice patties? No, it does not. It doesn't include any of the independent contributions that you're suggesting might be entitled to independent copyright protection. No, what I'm arguing is that these independent contributions show up in what he has claimed for his copyright. When you provide a back story that includes ethnicity and equipment and all sorts of other details, then when Mr. Gaylord sculpted these soldiers, he had to do it according to that back story. If that were the case, then every time I hire someone to do a sculpture of a man on a horse looking Western, I would be entitled to put my name on the copyright as co-author because I hire someone to sculpt me a man on a horse looking Western? No, Your Honor. Of course not. You wouldn't stand up here and say that. How are the suggestions that you're giving me now any different from that? It's not just the back story, although I think that's a very significant fact. You also have to consider that these different government agencies and Cooper Leckie architects, who the government got the rights from, were involved in nearly every step of the review. They reviewed not only for factors such as the back story, but they essentially coordinated Mr. Gaylord's contributions into the larger whole. When Mr. Gaylord proposed a design change that didn't fit with the story that the government agencies or Cooper Leckie was trying to create, then the agencies used their decision-making power and forced Mr. Gaylord to adapt. What do you do with Cooper Leckie's own admission that Mr. Gaylord is the sole author of the column? Your Honor, I believe that issue was covered by the Davis v. Blige case from the Second Circuit, which held that some sort of agreement that takes place after the work is created cannot retroactively go back and change the ownership. Because copyright vests, when the soldier statues were first created, and that was in 1994. In 1994, they reached final precast form. This agreement that you speak of didn't take place until 1995. Why couldn't it be viewed as a relinquishment of whatever they might have had? Well, first of all- They're not bound by any of these other circuits, so we have to address what we have here. I think one thing I'd like to point out as well, too, and this is covered by- Why couldn't it be viewed as a relinquishment of whatever rights they thought they had? I think it could be viewed, if this was a case between Cooper Leckie and Mr. Gaylord, it would be potentially viewed as relinquishment of rights from Cooper Leckie to Mr. Gaylord. But at the same time, Cooper Leckie was required to give a non-exclusive license to the government as soon as any copyright vested. This was a pre-existing contract between the government and Cooper Leckie. As soon as copyright vested in these soldier statues in 1994 before this 1995 agreement, then Cooper Leckie automatically assigned rights to the government. This was subject to a contracting officer's decision, which was not appealed as well. The other thing I'd like to point out as well, too, is there's been a- Because it does seem as if it does reach some of the fundamental issues here. Is this what the government is relying on? Not so much fair use. It's very difficult to attribute the classical attributes of fair use to 86 million stamps. Might say the Postal Service operates at a loss, so you can't call that commercial. But the original agreement between the government and Cooper Leckie was a straightforward recognition of copyright rights set aside ownership. Is this what you're relying on primarily, that those rights vested and Cooper Leckie couldn't give them away? That's right, Your Honor. As soon as copyright vested in the soldier statues in 1994, Cooper Leckie automatically transferred a non-exclusive license to the government for the statues. Now, the point I'd like to make as well, too, is there's been a more recent Seventh Circuit case called Jenke v. Lake County. It doesn't appear in the government's brief because the issue didn't come down until several weeks thereafter, but that's at 576 F. 3rd, 356. That case also stands for the proposition that you really look at an intent at the time that the work was created. Here, the proper time to look at is 1994, and in fact, all the collaboration that took place before 1994, between 1990 and 1994. And then as soon as copyright vested in these soldier statues, at that point, Cooper Leckie transferred a non-exclusive license to the government, as well as any copyright rights that the Veterans Advisory Board and the Commission for Fine Arts had. With my colleague's permission, I'd like to move you on to fair use. We don't have a lot of time, and I really do want to hear your argument on this. How is it that this is transformative? Your Honor, it's transformative essentially under the Supreme Court's doctrine in Campbell v. Acuff-Rose, where the Supreme Court said it's essentially a binary inquiry. That is, does the new work merely supersede the original work, or does it add something new? Is it transformative in that it has a further purpose or a different expression? Do you think there is a further purpose? On what point do you think it's transformative? I think it's both a further purpose and it adds additional expression. Now, note that the word or is there, so it's a disjunctive test. The additional expression that was added by both Mr. Ali and the Postal Service is one of cold, darkness, isolation, surrealism. None of these expressions appear in the original work. Have you seen the work? It is as cold, as dark, and surreal as anyone could imagine. Look at the work itself. Every adjective you just used is absolutely exemplified in this memorial. No, Your Honor. There's no snow, but if you don't think that it depicts cold, why are these men wearing ponchos? Why are they laden with everything that they're carrying? These men are much larger than life. How is that not surreal? I disagree, Your Honor. I think the testimony that's in the record indicates that what the commission, what Cooper-Leckie, what the parties were interested in depicting is the soldiers caught at a moment in time. It's a picture that's- But the parties were interested in depicting is irrelevant. The copyright is to the final product. The final product is that memorial, the column, not the rice patties. I shouldn't necessarily say the whole memorial because I recognize there are added features that are not covered by his copyright. But what needs to be transformed is what is in his copyright, not what the party's snow and some blurring. In fact, the snow has covered the rice patties and the other independent elements that the government suggested be added. Your Honor, the- How is that transformative? The expression washes out all of the color that's in the column if you walk down there today. And so it's these different feelings- If I made the Mona Lisa black and white, is there any doubt I've still infringed the copyright? In that hypothetical, you probably have infringed the copyright, or at least it wouldn't be considered to be a transformative work, Your Honor. So eliminating the color or some of the color because the stamp still has color, it's not even black and white. How can that amount to a transformation that would thereby get you out of copyright infringement? That's simply one fact of the artistic effects that were added by- Snow, blurring, and color. That's it. There's nothing else. I think the important thing to look at, Your Honor, is to look at what the photographer did and what the postal service did. They used the column, and that's not in dispute, but they used it as raw material to create a new work of art with new message and meaning. Counsel, the stamp itself says, Korean War Memorial on it. There can be no dispute what they were attempting to convey. They weren't attempting to fool you into believing this was something different than what it actually was. But it's a view of the Korean War Veterans Memorial in a particular setting with a particular message that comes across that isn't present if you were to just go down to the mall right now and look at the column. Because it didn't snow today? No, it's more than that, Your Honor. It's capturing that moment in the snow with the subdued lighting and the particular perspective and the blurriness. Now, all those individually don't sound like much, but essentially, what is any other form of art except for a particular capture of a moment in time? Because I haven't seen any copyright case that would allow something so insignificant as a slight blur and snow to amount to a transformation that would take an otherwise commercial use of someone's clear copyright and make it a fair use. I'm looking at all these other cases, and they take a picture of shoes and make a mockery of them. It's parody. It's comedy. It's the transformation that I see that's present in all of these other cases is so severe as compared to what you're arguing that I feel like we would be an island unto ourself as a circuit if we were to say this amounted to transformative. So let me give you a chance to respond because I know your time's up. I have to assure you that we haven't reached a decision on these parts. Thank you, Your Honor. They're not easy. They're quite complex. We need to appreciate what we're dealing with is a picture of a picture which is not exactly that which was created by the sculptor. He didn't create the snow. He didn't create the design on the stamp. That's correct, Your Honor. I think, Your Honor, if you look at the Bill Graham archives case from 2nd Circuit, there they used the Grateful Dead posters, and they were not commenting on the Grateful Dead posters. They were simply using them as historical artifacts to help explain their premise. If your focus is basically does the stamp talk about the original or parody it or make some comment about the original, it doesn't. But again, looking at the Campbell versus Acuff-Rose standard... You cited the Bill Graham case. Let me make sure I understand. Wasn't that sort of a commentary or a criticism use of those posters? Wasn't it deemed to be? No, Your Honor. Or I believe it could have been considered to be a comment. A commentary. That's correct. That's correct. And these posters were sort of one thing in a much larger volume, right? That's right. Exactly. Let me take you back to the contracts, because it seems that it was quite clear that as far as the contract between the government and Kuperleke is concerned, this use would be permitted, that the copyright values flowed when there turned out to be the relationship, the tardy relationship with a sculptor, and then its cancellation. Remind us how you believe as a matter of law that affected the transfers to the government, or at least the copyright license to the government. Your Honor, essentially, the government got all the rights from Kuperleke based on the pre-existing contract between the Army Corps of Engineers and Kuperleke. Now, Kuperleke and Mr. Gaylord had a few different agreements. The first few said, we'll defer the issue of copyright ownership. Then ultimately, in 1995, Kuperleke said, you have the copyright rights in the statues, and we have the rights in the memorial as a whole. But it doesn't really affect our argument, because our argument based on joint ownership is based on the fact that the copyright vested in these statues in 1994. Up until 1994, the parties had been coming together. They had been collaborating. They had been fusing all of their contributions into this unified whole, both the column and the memorial, which the column sits. So that's my explanation. Okay. Thank you. Any more questions? Any more questions? Thank you, Mr. Bolden. Mr. Fletcher, full rebuttal time. Thank you, Your Honor. The case I was talking about earlier was the Community for Creative Nonviolence versus Breed, 490 U.S. 730, 1898. And at page 20 of our reply brief, there is a picture of the sculpture involved in that case. That was the case that held that work made for hire was determined basically by agency principles, and that whether or not you pay Social Security and the like is a critical factor, all of which work against the government here. With respect to what is shown as the so-called joint authorship here, what we have at best is a contribution of ideas, and ideas are not copyrightable subject matter. It's the expression of the ideas. That goes all the way back to Blaustein against Donaldson Lithographic, which was an old case even when I was in law school. Can I ask you a couple of questions? So if I take a photograph of the memorial, I'm violating Mr. Gaylord's copyright? No. Okay, I'm sorry. Let's assume that every photograph I'm about to take in my various hypotheticals, I am selling for a profit, okay? I'm on the internet, 10,000 copies selling. I take a photograph of Mr. Gaylord's column, I'm copyright infringing. With the caveat that I would have to see the photograph, it's possible that you wouldn't, I suppose under certain circumstances, if you had a baby in the foreground, something like that. Oh, I see. No, I'm just taking a photograph of the column. Nobody's there. Just taking a photograph. Now, does it matter whether I take it at dawn or at sunset? To the copyright infringement? No, of course not. Does it matter whether I take it in fall, winter, summer, or spring? Absolutely not. Does it matter whether there are blooming flowers at his feet versus snow on the ground? His feet meaning soldiers? No, of course not, because you're still taking a picture of the work, and you're taking it in the environment in which it was intended to be displayed and is displayed. Now, these photographs, just so I know, suppose that the government filed its own copyright on the memorial, including the rice patties and various other contributions, as opposed to the column. So it filed its own copyright on the collective memorial, maybe a sign in front that indicates things, the rice patties, maybe other things. And so now, if I take that photograph, am I violating their copyright? Maybe. I'd have to see the photograph. Am I also violating your copyright at the same time? Surely. So it's possible I would be violating two copyrights, and even if the government gave me their authority to go ahead and violate their copyright, it doesn't ultimately- Sure. By the same token that some of the derivative works from Gone with the Wind have been accused of copyright, both by Metro-Goldenware, the maker of the movies, and whatever that lady's name was who wrote the book, or whoever holds her copyright rights now. There's no clear indication of any contribution of a copyrightable element by Gaylord. You know, simply saying make the face Hispanic instead of Italian is much more of an idea than it is the expression of an idea. And aside from that, the person who made the face Hispanic rather than Italian at the direction of Leckie was the sculptor. And it's his expression, which is the copyrighted thing, not the general idea that this shall be a person of certain ethnicity. The court below noted that whatever rights may have been between Cooper Leckie and- or Leckie, I guess, and the government did not necessarily flow down to the agreement with Mr. Gaylord. I think this is- I've heard of third party beneficiary arguments. I think this is a third party victim argument they're trying to make. And I know no basis for it. Finally, with- We need to wrap it up, if you would, please. I was going to say, if I may, I have one more sentence. Yes. I think the most telling thing in this case as to whether or not the substance, and there is an infringement of copyright in what is charged as an infringement of the stamp here, is that if you look at the stamp, there is absolutely no stamp without the column. That's the- I'm sorry. It was my second sentence. I think I said it. Thank you very much. Okay. Thank you, Mr. Fletcher, Mr. Bowden. The case is taken under submission. The honorable court is adjourned tomorrow morning at 10 o'clock a.m.